ROBT. DOWNEY *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 7—676.]

**Evidence of Reputation in Criminal Cause.**

The commonwealth can not call witnesses to establish the general bad reputation of one on trial for murder; but where such witnesses are called by the accused to establish the deceased's bad reputation the commonwealth's attorney upon cross-examination has the right to interrogate the witnesses with a view of determining the weight and value of their testimony.

**Instruction.**

The evidence given in the trial of one charged with murder showed that the accused and deceased entered into a mutual conflict, upon equal terms, each showing an intention to take the life of the other. It was held that the only question for the jury to determine was whether the accused was guilty of murder or manslaughter, and that an instruction as to which of the parties was the aggressor is immaterial; and where an instruction states that the only one of the parties who could be guilty is the one who invited the conflict, it is erroneous in that it is more favorable to the accused than the law warrants; and as the instruction did not harm the accused he could not complain of it.

## APPEAL FROM FLEMING CIRCUIT COURT.

March 13, 1886.

OPINION BY JUDGE LEWIS:

Appellant, being indicted for the murder of William Humphries, was convicted of manslaughter, and now relies for the reversal of the judgment upon the alleged errors of the court in permitting illegal testimony to go to the jury and in giving improper instructions. In answer to a question by counsel for appellant by whom he was introduced one of the witnesses stated that the reputation of Humphries, the deceased, for peace and violence was bad, that he carried a pistol, and the witness had heard of him getting into a combat. Upon cross-examination by the attorney for the commonwealth the witness gave the names of persons whom he had heard say Humphries was a dangerous boy. He was then asked this question: "Is not this what you heard people say, that he was going to the dogs by keeping bad company, such as with Downey and Helphenstone?" To that question appellant's counsel objected, but the court permitted the witness to answer and his answer was, "I have heard people talk that way. I have heard people talk about his reputation for peace and violence, and of going into bad company, such as Downey and Helphenstone." The same answers were substantially given by two other witnesses to questions on cross-examination by the attorney for the commonwealth.

It is well settled that the commonwealth can not call witnesses to establish the general bad reputation of the accused. But the witnesses for the accused having testified as to the general bad reputation of the accused for violence with a view to exculpate himself from the charge, the commonwealth's attorney on cross-examination according to a rule equally well settled had the right to interrogate the witness with a view of determining the weight and value of his testimony. The only inquiry is whether the question and answer complained of extended beyond the legitimate bounds of cross-examination. The witness had stated the general reputation of the deceased for peace and violence was bad, and gave the names of persons whom he had heard speak on the subject. It thus became a legitimate and proper inquiry on cross-examination whether what the witness had heard about him was not some-

thing else that did not in fact amount to a bad reputation for vio-
lence, and did not show him to be a dangerous person.

It may be true the countervailing or explanatory evidence might
have been obtained without designating the accused as one of the
bad company meant.  But we do not think evidence as to the char-
acter of either the prisoner or the accused was material or af-
fected the issue, for there were only two eyewitnesses to the kill-
ing who testified, and whether the statement of one or the other
of them be credited it clearly appears that the fight between the
accused and the deceased was with pistols, mutually and willingly
entered into by them.  It appears that they together with the wit-
ness, Gilkerson, had, a short time previous to the killing, been play-
ing cards on the wayside, and while so engaged several persons
came along the road to where they were, to one of whom the de-
ceased said he had beaten three straight games, whereupon the
accused said it was a G— damned lie, and to the further remark
of the deceased that he had saved his jack the accused replied
it was "a damned lie, you son of a bitch."  But there is evidence
tending to show they were afterward reconciled, or at least they
some time afterward left the place together accompanied by Gil-
kerson, and had proceeded about two hundred yards, where the
fight occurred which terminated in the death of Humphries.

Both the witnesses who saw the fight agree that on the occa-
sion the first offensive language was used by the accused, one of
them stating that he applied an atrocious epithet to the deceased.
Gilkerson states that the deceased first drew and presented a pis-
tol, whereupon the accused remarked that if he had a pistol he
would kill the deceased.  The latter then handed him one of his
and the firing then began, the witness not being able to tell which
fired first.  The other witness heard the accused say if he had a
pistol he would shoot the deceased, and saw the accused put his
hand behind him and at once commence shooting, firing the first
shot, there being according to both witnesses about eight shots
fired before the deceased fell to the ground.

Upon the conclusion of the evidence the court gave two instruc-
tions bearing upon the questions of murder and manslaughter, and
counsel for the accused asked for five, the following being given
by the court in lieu of the fifth one of them, which was refused.
"The court instructs the jury that, although at the time the ac-

cused, Downey, shot and killed the deceased, Humphrey, if they believe from all the evidence beyond a reasonable doubt he did so, the accused believed and had reasonable grounds to believe that he, said Downey, was in immediate impending danger of loss of life or great bodily harm at the hands of said Humphrey, still he had no right to shoot the deceased if the jury believe from all the evidence beyond a reasonable doubt that he, the said Downey, by his own act invited said danger, and that said Humphreys at the time believed and had reasonable grounds to believe that he himself was then in immediate impending danger of loss of life or great bodily harm." Instruction No. 5 offered by the accused and refused was, in substance, that if the deceased by his own act invited the conflict and the danger to himself from the defendant then he had no right to shoot defendant, or inflict on him great bodily harm; and if he attempted to do so under these circumstances, or if the defendant believed or had reasonable grounds to believe that the deceased was about to shoot him or inflict on him great harm under said circumstances, then the defendant had the right to defend himself from such real or apparent danger by the use of such means as were in his power; and if in doing so he shot and killed the deceased they should acquit him. The true meaning of this instruction is that if one person invites or challenges another to fight with deadly weapons, and the latter accepts, and they both willingly and upon equal terms enter into the deadly conflict, the one who invites the conflict is the only one of them who can be guilty, the other being entitled to an acquittal upon the ground that he merely accepted the invitation of the other and is therefore excusable on the ground of self-defense.

The instruction was properly refused. But the one given in lieu of it was also improper, but more favorable to the accused than the law authorized, for as both the accused and the deceased, according to the only evidence given, willingly entered into a mutual conflict upon equal terms, each showing beyond question an intention to take the life of the other, the only question for the jury to determine was whether the accused was guilty of murder or manslaughter, as it would have been the only question on the trial of Humphreys if he had killed the accused instead of being killed. It is therefore immaterial in this case who invited the danger. While, therefore, there was no necessity for the court to instruct

the jury as to whether the accused did or did not invite the danger, we think he was not prejudiced by the instruction, but it was more favorable than he was entitled to. We perceive no error in this case to the prejudice of the substantial rights of appellant and the judgment must be *affirmed*.

*Andrews & Suddith, Wm. G. Dearing, H. L. Stone, for appellant.*
*P. W. Hardin, for appellee.*